UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

JUDITH GIORDANO, Administratrix of
the Estate of Ruth L. Brennan, deceased,

    Plaintiff,

v.                                          ACTION NO. 2:05cv720

ATRIA ASSISTED LIVING,
VIRGINIA BEACH, L.L.C.,

    Defendant.

## O R D E R

This matter was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c)(1) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. On January 12, 2006, all parties consented to trial before a Magistrate Judge, and an order of reference was filed January 17, 2006.

After a review of the memoranda and the applicable statutory and case law, the Court DENIES the Defendant's motion to compel arbitration for the reasons set forth below.

### I. PROCEDURAL AND FACTUAL BACKGROUND

On March 7, 2003, Judith Giordano (" Ms. Giordano"), daughter of Plaintiff decedent Ruth L. Brennan ("Ms. Brennan"), contracted with Atria Assisted Living LLC of Virginia Beach ("Atria") to provide housing for her elderly mother. Ms. Giordano signed the Residency Agreement ("Residency Agreement") in her name as "responsible party" and also signed her mother's name as

"resident." (Pl.'s Reply Br., Ex. A at 1.) Ms. Giordano stated in an affidavit dated February 7, 2006, that she had not discussed with her mother whether she had consent to sign Ms. Brennan's name to the agreement, or whether the agreement would be in Ms. Brennan's best interest. (Pl.'s Reply Br., Ex. B.) Ms. Brennan was not present at the time that Ms. Giordano signed the Residency Agreement, and Ms. Giordano did not posses a power of attorney at the time she signed Ms. Brennan's name. (Id.) There is no evidence that Atria either investigated Ms. Giordano's authority to sign the agreement, or inquired as to the character and extent of that alleged authority. Ms. Brennan was admitted to the Atria facility on March 9, 2003. (Pl.'s Reply Br., Ex. B.)

This complaint arises from a Virginia Death by Wrongful Act claim. Va. Code §8.01-50 (2006). Ms. Brennan's administratrix, Ms. Giordano, sues on Ms. Brennan's behalf. Ms. Brennan was injured in the Atria facility on March 28, 2005, and she died on July 30, 2005. (Compl., Ex. A.) Plaintiff alleges that Atria's negligence resulted in Ms. Brennan's injury and death. This civil action was initially filed in the Circuit Court for the City of Virginia Beach on or about September 16, 2005. This case comes to federal court by Atria's notice of removal filed December 8, 2005, citing diversity of citizenship as basis for jurisdiction.

On February 6, 2006, Atria filed a motion to compel arbitration and to stay this action pending the Court's ruling on the motion. The Plaintiff filed a reply brief to Defendant's motion to compel arbitration on February 15, 2006, and the Defendant responded on February 23, 2006. A hearing was held on February 27, 2006. The Plaintiff was represented by Carlton F. Bennett, Esq., and C. Stewart Gill, Esq. The Defendant was represented by William B. Tiller, Esq, and Tracy Robinson, Esq. The official court reporter was Gloria Smith. At the hearing the Court heard arguments and granted leave to the Plaintiff to file a second reply brief in order to address directly

arguments brought up in the Defendant's reply brief, but not included in the memorandum accompanying the original motion. The Plaintiff filed a second reply brief on March 3, 2006.

## II. STANDARD OF REVIEW

"Whether an agency relationship exists is a question to be resolved by the fact finder unless the existence of the relationship is shown by undisputed facts or by unambiguous written documents." Acordia of Virginia Ins. Agency, Inc. v. Genito Glenn, L.P., 560 S.E.2d 246, 249 (Va. 2002)(citations omitted). It is thus within the purview of this Court to resolved the question of agency, as there is neither a written document delineating agency nor undisputed facts establishing agency.

## III. ANALYSIS

At issue in this motion is whether Ms. Brennan's estate is bound to the arbitration clause contained in the Residency Agreement. The legal questions presented are: (1) whether Ms. Giordano acted as an agent for Ms. Brennan when she signed the Atria Residency Agreement, which contained an arbitration clause; and, (2) whether the combination of Ms. Giordano's signature on the Residency Agreement and Ms. Brennan's two-year residence at the Atria facility in compliance with the Residency Agreement constituted an apparent agency relationship under Virginia law.

Arbitration clauses are favored in Virginia as a matter of law and policy. See T.M. Delmarva Power v. NCP of Virginia, 557 S.E.2d 119 (N.C. App. 2001); see also Va. Code Ann. §8.01-581.01 (2006). They are to be applied according to state contract law, and the agreement to arbitrate a conflict must be interpreted like any other element of a contract. See Arrants v. Buck, 130 F.3d 636 (4th Cir. 1997); see also Rainwater v. National Home Ins. Co., 944 F.2d 190 (4th Cir. 1991). "Generally, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration

any dispute which he has not agreed so to submit." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411 (4th Cir. 2000)(citing United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)); accord Brooks and Company General Contractors, Inc. v. Randy Robinson Contracting, Inc., 513 S.E.2d 858 (Va. 1999) (arbitration agreement not binding because there had been no meeting of the minds). "A party cannot be compelled to submit to arbitration unless he has first agreed to arbitrate." Doyl and Russel, Inc. v. Roanoke Hosp., 193 S.E.2d 662, 666 (Va. 1973).

In order for a valid contract to be formed, the axiomatic meeting of the minds must occur. "A contract involves a bilateral exchange, a meeting of the minds, and an understanding of obligations undertaken..." Jones v. Peacock, 591 S.E.2d 83, 87 (Va. 2004). Arbitration agreements are no exception. The Virginia Supreme Court stayed arbitration in Brooks and Co. General Contractors, Inc. v. Randy Robinson Contracting, Inc., 513 S.E.2d 858 (Va. 1999), because it found that there was no meeting of the minds despite actual performance of the alleged contract. "Brooks simply failed to show there was a meeting of the minds...without such a showing, it cannot be said that Robinson accepted the terms of the modified contract by performance." Id. at 863. In order for there to be a meeting of the minds, both parties to the contract must agree to the terms, conditions, and elements of that contract; these presuppose knowledge of the contract.

In this case no evidence has been presented that Ms. Brennan was aware of the terms, conditions and requirements the contract contained, including the arbitration clause. In fact, there is no evidence that Ms. Brennan was aware of the existence of the contract. Based upon these facts, this court finds that there was no mutual assent as required by International Paper, Brooks, and common law. This finding does not, however, automatically preclude enforcement of the arbitration

clause contained in the Residency Agreement. See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411 (4th Cir. 2000) According to International Paper there are five instances where a non-signatory to a contract may be bound: incorporation by references; estoppel; agency; assumption; and, veil piercing/alter ego. Id.; see also Thomson-CSF v. American Arbitration Ass'n, 64 F.3d 773 (2nd Cir.1995). Of those exceptions, only agency is at issue in this motion.

Atria bases its argument for binding Ms. Brennan's estate to the arbitration clause in the contract upon two principals: agency and apparent agency. "The law of agency provides that 'when an agent, acting within the scope of his apparent agency, enters into a contract with a third person 'the principal becomes immediately a contracting party, with both rights and liabilities to the third person." Marchall Erdman & Associates. v. Loehr, 485 S.E.2d 145, 149 (Va. App. 1997)(quoting Equitable Variable Life Ins. Co.  v. Wood, 362 S.E.2d 741, 744 (Va. 1987)). It is this principal that Atria advocates.

Agency is a "fiduciary relationship resulting from one person's manifestation of consent to another person that the other shall act on his behalf and subject to his control, and the other person's manifestation of consent so to act." Reistroffer v. Pierson, 439 S.E.2d 376, 378 (Va. 1994); accord Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P., 560 S.E.2d 246, 249 (Va. 2002).  Apparent agency, a more attenuated entity, exists when "one...permits another to hold himself out as agent and appears to acquiesce in that assumption of authority." Sanchez v. Medicorp Health Sys., 618 S.E.2d 331 (Va. 2005).  Apparent agency is distinct from agency in that agency is applied when an agreement for representation actually exists between the principal and the agent.  Apparent agency exists when there is an appearance of agency paired with acquiescence thereto and reasonable reliance thereupon; it is based upon logical assumptions and reasonable conclusions.

## A. AGENCY

Atria asserts that Ms. Giordano was Ms. Brennan's agent at the time Ms. Giordano signed the Residency Agreement. The burden of proving agency rests upon the party alleging that agency exists, Atria in this case. See Hartzell Fan, Inc. v. Waco, Inc., 505 S.E.2d 196, 200 (Va. 1998 ); see also State Farm Mut. Auto. Ins. Co. v. Weisman, 441 S.E.2d 16 (Va. 1994). As stated above, agency is a "fiduciary relationship resulting from one person's manifestation of *consent* to another person that the other shall act on his behalf and subject to his *control*, and the other person's manifestation of consent so to act." Reistroffer v. Pierson, 439 S.E.2d 376, 378 (Va. 1994)(emphasis added); accord Acordia of Va. Ins. Agency, Inc. v. Genito Glenn, L.P., 560 S.E.2d 246, 249 (Va. 2002); accord Restatement (Second) of Agency §1 (1958). Atria bases their agency argument upon the solitary fact that Ms. Giordano signed Ms. Brennan's name to the Residency Agreement; they do not present any additional evidence to support their claim.

Consent is defined as the manifestation of intent by the principal to the agent. "[A]uthority [or consent] to do an act can be created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account." Restatement (Second) of Agency §26 (1958). This manifestation is usually characterized as verbal, contractual, or written consent. Id. A clear definition is also available for the control element of the apparent agency. "The right of control by the principal may be exercised by prescribing what the agent shall or shall not do before the agent acts, or at the time when he acts, or at both times." Restatement (Second) of Agency §14 (1958). "[T]he fact that it is understood that the person acting is not to be subject to the control of the other as to the manner of performance determines that the relation is not that of agency." Id. Ms. Giordano stated in an affidavit dated

February 7, 2006, that she had not discussed with her mother whether she had consent to sign Ms. Brennan's name to the agreement, or whether the agreement would be in Ms. Brennan's best interest. (Plaintiff's Reply Brief, Ex. B).  Ms. Brennan was also not present at the time that Ms. Giordano signed the agreement, and Ms. Giordano did not possess a power of attorney for her mother. (Id.)

Relying upon the evidence in the record, this court finds that the consent and control necessary to form a legal agency were not present.  Ms. Giordano specifically stated that she did not have consent to sign the Residency Agreement, and there are no facts indicating that Ms. Brennan exercised control over Ms. Giordano at the time of the signature.  Atria, the party bearing the burden of proving agency, did not overcome the evidence presented in the affidavit.  Atria thus fails on the agency assertion.

### B. APPARENT AGENCY

This Court next turns to Atria's contention that Ms. Giordano served as an apparent agent when she signed the Residency Agreement for Ms. Brennan.  Apparent agency is not established by the principal's grant of consent to the agent and maintenance of control, as is agency, but by the reasonable perception of third parties.  "[T]he term 'apparent or ostensible agency' (sometimes also called 'agency by estoppel,') means 'an agency created by operation of law and established by a principal's actions that would reasonably lead a third person to conclude that an agency exists." Leasly Sanchez v. Medicorp Health System, d/b/a/ Mary Washington Hosp., Inc., 618 S.E.2d 331, 333 (Va. 2005)(citations omitted).  The apparent agency relationship is not easily established, even in circumstances where the alleged apparent agent seems closely connected to the principal.  See id. (doctor who worked in hospital's emergency room as an independent contractor was not apparent agent of that hospital).

In order to make a successful apparent agency argument, Atria must prove that Ms. Brennan manifested implicit consent through her actions (or inactions) to Ms. Giordano's agency and that Atria reasonably relied upon those representations. We will first turn to an analysis of the first element of apparent agency, Ms. Brennan's professed manifestation of consent. According to the above-cited case law, this acquiescent consent can be conveyed through "permi[ssion]," "action[]," and "manifestation[]." See Leasly Sanchez v. Medicorp Health System, d/b/a/ Mary Washington Hosp., Inc., 618 S.E.2d 331, 333 (Va. 2005). Atria maintains that Ms. Giordano's signature on the Residency Agreement, Ms. Brennan's residency in the facility in compliance with the terms of the contract for two years, and the fact that Ms. Brennan never questioned the Residency Agreement are sufficient to prove the existence of an apparent agency relationship. This Court disagrees.

The probative facts in this case are as follow: Ms. Brennan did not sign the Residency Agreement; she did not give consent to Ms. Giordano to sign the Residency Agreement; Ms. Brennan did not discuss with Ms. Giordano whether the agreement would be beneficial to her; and, there is no proof that Ms. Brennan was, in fact, aware that the Residency Agreement existed. In a case similar to this one, the Circuit Court of Roanoke, Virginia, found an arbitration agreement to be non-binding upon a decedent's estate when the Residency Agreement was signed by the decedent's son. Joseph A. Bishop, Executor of the Estate of Eva Rachel Bishop, Deceased v. Medical Facilities of America XLVII (47) Ltd. Partnership, Trading as the Berkshire Healthcare Center, et al., 65 Va. Cir. 187 (2004). The facts that the Roanoke Court found compelling are similar to the ones that this Court finds persuasive. "There is no evidence to suggest that Eva Bishop was present or was even aware of the contract...[n]or is there any evidence to suggest that Eva Bishop had authorized her son to sign the contract on her behalf or that she had any power or control over

8

her son relative to the contract." Id. Although there are certainly factual differences between these cases - in that case the son held a power of attorney and did not sign his mother's name - that court's reluctance to bind the alleged signatory to the agreement is telling. The alleged agent in that case had more authority than Ms. Giordano (he possessed a power of attorney), however, the court remained unwilling to bind the estate to the arbitration clause. In this case the purported agent did not have a legal power of attorney, though she did sign her mother's name. The facts supporting the finding of apparent agency in this case are no stronger than the facts in Bishop, and this Court finds accordingly.

      Atria draws as a parallel to this case, the Virginia case Bloxom v. Rose, 144 S.E. 642 (Va. 1928). In Bloxom the Supreme Court of Virginia found a father, who tended his son's farm for a year, to be the apparent agent of his son. The court bound the son, who was the owner of a farm, to a leasing contract executed by his father. In that case the son's permission, action, and manifestation of consent were supported by numerous indicia of control, including: his father's "management and control of the defendant's farm and personal property" for one year; the father's authority to draw on the defendant's bank account in defendant's name; the father's procurement of deposits, in the defendant's bank account, of the funds derived from the farm for the one-year period; and, an account kept by a potato distributor held in the name of "Malcom Bloxom, agent for Wm. E. Bloxom." Bloxom v. Rose, 144 S.E.642, 643-644 (Va. 1928). Additionally, the son verified the contested contract upon his return, "assur[ing] Rose, [the lessor], that he would see that he (Rose) got the one-third share to which he was entitled under the contract." Id. at 644. Note that the Bloxom court stated that the fact that the father had "management and control of the farm" for the year term was by itself sufficient to establish agency. Id. Bloxom is easily distinguished from the case at hand.

9

The most prominent differences between this case and Bloxom are the continuing actions and significant responsibilities of the agent (the father) in Bloxom, and the unquestionable intent of the principal to endow the agent with those powers and responsibilities. It was well-established that in Bloxom the son gave his father permission to work the farm and had full knowledge that his father planned to do so. Id. The father had complete control over the farm for an entire year, and the son derived financial gain from the father's work during the time period the father was in charge of the farm. Id. at 642-644. Thus, in Bloxom the son clearly consented to the father's presence and control on the land, and acted in a manner that would lead others to believe reasonably that the father was in charge, wholly and unconditionally, of the son's farm. Despite these persuasive facts, both father and son in Bloxom denied agency. Id. The Supreme Court of Virginia held that while the son might not have intended to bestow upon his father the title of "agent," the significant indicia discussed above unquestionably established the existence of apparent agency. Bloxom v. Rose, 144 S.E.642 (Va. 1928).

In contrast, this case represents an isolated incident of "agency" where the daughter signed her mother's name on one occasion. That incident is unsupported by a continuing historic, legal or commercial relationship, unlike Bloxom. Further, Ms. Brennan did not give Ms. Giordano extensive control over any other element of her life, much less a very large one such as the farm and bank accounts in Bloxom. Ms. Giordano did not continue to appear as an agent for her mother as did the father in Bloxom, nor did Ms. Brennan repeatedly confirm and adopt her daughter's action (like the son adopted the contract in Bloxom). Ms. Giordano's alleged agency was an incident limited in scope and time, unsubstantiated by practices past and future, unlike most instances where apparent agency arises. Ms. Brennan did appear to comply with the Residency Agreement, but her lack of

knowledge significantly diminishes an argument that she accepted the contract by living in the facility; her acquiescence to living in the facility does not amount to acquiescence regarding the arbitration clause contained in the Residency Agreement.

The court must also find that a third party reasonably relied upon the purported agent, in order to find apparent agency. Atria is a sophisticated, corporate client. They should be familiar with the usual devices utilized to ensure valid contract formation when a principal does not sign in person - namely powers of attorney. In this case Atria did nothing to ensure that Ms. Giordano was a lawful agent of Ms. Brennan. They did not require that she possess a power of attorney before she signed the contract, and there is no evidence that they ever inquired whether she had authority to sign for Ms. Brennan. Because of these facts, this Court finds that Atria did not reasonably rely upon the signature of Ms. Giordano to their detriment.

### C. AUTHORITY OF AGENT

Even if this Court were to find agency or apparent agency applicable in this case, Ms. Giordano's actions would have been limited by the scope of that agency. A finding of agency is not a *carte blanche* grant of authority to the agent. See Morris v. Dame's Ex'r, 171 S.E. 662 (Va. 1933) (agent driving truck for principal did not have authority to pick up hitch-hiker, and when he did so was not acting within ambit of his agency). If this court were to find that agency or apparent agency applied to this case, the next step in our analysis would be to examine the extent of that agency. We would look to the doctrine of apparent authority to determine the scope of Ms. Giordano's agency. Apparent authority is "the 'authority that a third party reasonably believes an agent has, based on the third party's dealings with the principal, even though the principal did not confer on intend to confer the authority." Leasly Sanchez v. Medicorp Health System, d/b/a/ Mary

Washington Hosp., Inc., 618 S.E.2d 331, 333 (Va. 2005)(citations omitted). "As between the principal and agent and third persons, the mutual rights and liabilities are governed by the apparent scope of the agent's authority, which is that authority which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possessed the authority which he exercised." Id. (citations omitted). In this case it is clear that the scope of agency allegedly bestowed upon Ms. Giordano by Ms. Brennan was limited to that authority needed to contract for living arrangements in the Atria facility. To a layperson the existence of an arbitration provision could be unexpected, as it is not a customary element of a contract dealing with living arrangements. If Ms. Giordano was serving as an agent for Ms. Brennan, she only possessed the apparent authority to bind Ms. Brennan to financial, medical, and other logical obligations arising from residence in the Atria facility. She did not possess the apparent authority to waive her mother's right to a trial by jury and bind her to mandatory arbitration.

### D. EQUITABLE ESTOPPEL

Although Atria does not rely upon equitable estoppel, this Court finds that it is worth mentioning, if only to quickly dispose of the inapplicable concept. Equitable estoppel may bind an entity to a contract when the suit arises out of that contract. "International Paper's entire case hinges on its asserted rights under the Wood-Schwabedissen contract; it cannot seek to enforce those contractual rights and avoid the contract's requirement that 'any dispute arising out of' the contract be arbitrated." Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000). This case arises not out of a breach of contract action, but instead of out a common law negligence action and statutory wrongful death claim. Because Ms. Brennan's estate is not

12

relying upon the contract as a basis of the suit, the estate is not estopped from rejecting certain elements of that contract by equity.

### E. CONCLUSION

The Supreme Court of Virginia in <u>Bloxom</u> stated that "[i]t is impossible to lay down any inflexible rule by which it can be determined what evidence shall be sufficient to establish agency in any given case. That is a question which must be determined in view of the facts in each particular case." <u>Bloxom v. Rose</u>, 144 S.E.642, 643 (Va. 1928). Through applying the facts of this case to Virginia law, this Court finds that Ms. Giordano's signature on the Residency Agreement, even when paired with Ms. Brennan's two years of residency, was insufficient to establish that Ms. Giordano was an agent or an apparent agent for Ms. Brennan. Further, Atria is a sophisticated corporate client utterly capable of inquiring into the legal status of the person with whom it contracts. Atria should be cognizant of the fact that legal documentation of agency is necessary to form valid contracts when one party to the agreement is absent and agency has not been clearly established. This Court will not bind an individual to an arbitration clause in a contract which she did not sign, did not consent to, and perhaps, of which, she was completely unaware, in the absence of legal documentation granting the signatory a legal power of attorney, or conclusive evidence that the principal intended for the signatory to bind her to the agreement and that the signatory had full authority to bind the principal to all elements of that agreement. If these core principals are absent, binding a principal to such a contract resonates against law and policy.

## IV. **ORDER**

The Court DENIES the Defendant's motion to compel arbitration, Document 9. The Clerk shall mail a copy of this Order to all counsel of record.

                                                                                     /s/  
                                                           Tommy E. Miller  
                                    UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

March 29, 2006